THE O'MARA LAW FIRM, P.C.
WILLIAM M. O'MARA (Nevada Bar No. 0837)
DAVID C. O'MARA (Nevada Bar No. 8599)
311 East Liberty Street
Reno, NV 89501
Telephone: 775/323-1321
775/323-4082 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARISSA BALLESTEROS, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>vs.<br><br>GALECTIN THERAPEUTICS INC., JAMES C. CZIRR, PETER G. TRABER and JACK W. CALLICUTT,<br><br>      Defendants. | No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Galectin Therapeutics Inc. ("Galectin" or the "Company"), as well as media reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all persons who purchased or otherwise acquired Galectin publicly traded securities between January 6, 2014 and July 28, 2014, inclusive (the "Class Period"), against Galectin and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act"). These claims are asserted against Galectin and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases and filings with the SEC.

2. Galectin is a development stage company engaged in the research and development of therapies for fibrotic disease and cancer. The Company's lead product candidates include GR-MD-02, a complex polysaccharide polymer for the treatment of liver fibrosis and fatty liver disease (non-alcoholic steatohepatitis or "NASH").

3. Throughout the Class Period, defendants violated the federal securities laws by disseminating false and misleading statements to the investing public. As a result of defendants' false statements, Galectin's stock traded at artificially inflated prices during the Class Period, reaching a high of $18.30 per share on February 27, 2014.

4. On July 28, 2014, Bleecker Street Research published an article on *SeekingAlpha.com* claiming that Galectin "has strong ties to stock promoters" engaging in a misleading brand awareness campaign aimed at boosting its stock price.

5. On July 28, 2014, Adam Feuerstein ("Feuerstein") published an article on *TheStreet.com* revealing that Emerging Growth Corp. ("Emerging Growth"), through its parent company TDM Financial ("TDM"), a penny-stock promotions firm, was the investor relations and marketing company Galectin was paying for misleading promotional campaigns to entice investors to buy its stock.

6. On this news, Galectin's stock plummeted $8.84 per share to close at $5.70 per share on July 29, 2014, a one-day decline of nearly 61% on volume of nearly 7.7 million shares.

7. As a result of defendants' false statements, Galectin securities traded at artificially inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's securities were hammered by massive sales, sending the Company's stock price down nearly 69% from its Class Period high.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 (17 C.F.R. §240.10b-5) promulgated thereunder by the SEC. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act (15 U.S.C. §78aa).

9. Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District and Galectin is incorporated in Nevada.

10. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

11. Plaintiff Marissa Ballesteros purchased the publicly traded securities of Galectin during the Class Period as set forth in the certification attached hereto and was damaged as the result of defendants' wrongdoing as alleged in this complaint.

12. Defendant Galectin is an early-stage biotechnology company developing a number of active compounds to treat fibrotic diseases and cancer.

13. Defendant James C. Czirr ("Czirr") is, and at all relevant times was, Executive Chairman of the Board of the Company.

14. Defendant Peter G. Traber ("Traber") is, and at all relevant times was, President, Chief Executive Officer ("CEO"), Chief Medical Officer and a director of the Company.

15. Defendant Jack W. Callicutt ("Callicutt") is, and at all relevant times was, Chief Financial Officer ("CFO") of the Company.

16. The defendants named above in ¶¶13-15 are referred to herein as the "Individual Defendants."

17. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Galectin's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company,

and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

18. Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Galectin. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Galectin publicly traded securities was a success, as it: (i) deceived the investing public regarding Galectin's prospects and business; (ii) artificially inflated the prices of Galectin publicly traded securities; and (iii) caused plaintiff and other members of the Class to purchase Galectin publicly traded securities at inflated prices.

## BACKGROUND

19. Galectin is a development stage company engaged in the research and development of therapies for fibrotic disease and cancer. The Company's lead product candidates include GR-MD-02 to treat NASH, a disease that leads to fatty buildup in the liver and can potentially lead to cirrhosis and/or liver cancer. The Company is in Phase 1 clinical trials for GR-MD-02 to assess the drug's safety and efficacy in treating patients with NASH.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

20. On January 6, 2014, Galectin issued a press release entitled "Galectin Therapeutics Receives US Patent for Combination Treatment for Liver Fibrosis." The release stated in part:

> Galectin Therapeutics, the leading developer of therapeutics that target galectin proteins to treat fibrosis and cancer, today announced that it has received a notice of allowance from the U.S. Patent and Trademark Office for patent application number

13/550,962 titled "Galactose-Pronged Polysaccharides in a Formulation for Anti-fibrotic Therapies." The patent covers both composition claim for and uses of the Company's carbohydrate-based galectin inhibitor compound GR-MD-02 for use in patients with liver fibrosis in combination with other potential therapeutic agents. The patent covers use of GR-MD-02 with agents directed at multiple targets, some of which are currently in clinical development for fibrotic disorders including monoclonal antibodies to connective tissue growth factor, integrins, and TGF-$\beta$1.

"This patent provides additional coverage in the U.S. for the use of GR-MD-02 in combination with other potential anti-fibrotic agents in the treatment of liver fibrosis," said Peter G. Traber, MD, President, CEO and CMO of Galectin Therapeutics. "In the future, liver fibrosis could be treated with a combination of agents, and this patent provides important intellectual property for this possibility. We are hopeful that our development program for GR-MD-02 will lead to the first therapy for the large unmet medical need of liver fibrosis."

Galectin Therapeutics is currently conducting a Phase 1 clinical trial to evaluate the safety, tolerability and exploratory biomarkers for efficacy for single and multiple doses of GR-MD-02 over four weekly doses of GR-MD-02 treatment in patients with fatty liver disease with advanced fibrosis. In March 2013, the U.S. Food and Drug Administration (FDA) granted GR-MD-02 Fast Track designation for non-alcoholic steatohepatitis (NASH) with hepatic fibrosis, commonly known as fatty liver disease with advanced fibrosis.

21. In the three days following this release, Galectin's stock increased from $8.36 per share to $15.10 per share on heavy trading volume.

22. On February 27, 2014, Galectin's stock price reached its Class Period high of $18.30 per share.

23. On March 25, 2014, Galectin issued a press release entitled "Galectin Therapeutics to Announce Results From First Cohort of Phase 1 Clinical Trial in Fatty Liver Disease," announcing that the Company "will report results from the first cohort of its Phase 1 clinical trial examining GR-MD-02 in fatty liver disease (NASH) with advanced fibrosis" on March 31, 2014.

24. On March 31, 2014, Galectin issued a press release entitled "First Cohort Results in Galectin Therapeutics' Phase 1 Trial Reveal Biomarker Evidence of Therapeutic Effect on Fibrosis and Inflammation in NASH With Advanced Fibrosis," which stated in part:

- 5 -

"We are extremely pleased with the positive results of the first cohort of our Phase 1 trial, which suggest a role for GR-MD-02 in the treatment of patients with fatty liver disease with advanced fibrosis," said Peter G. Traber, M.D., Chief Executive Officer, President and Chief Medical Officer of Galectin Therapeutics. "Fatty liver disease, characterized by the presence of fat in the liver along with inflammation, over time can develop into fibrosis, or scarring of the liver, which is estimated to affect millions of Americans. Intervention with the intent of reversing the fibrosis is a potentially important therapeutic approach in fatty liver disease, a condition with significant unmet medical need."

25.  On April 23, 2014, Galectin issued a press release entitled "Galectin Therapeutics Completes Enrollment of Second Cohort of Phase 1 Trial of GR-MD-02 for NASH (Fatty Liver Disease) With Advanced Fibrosis," which stated in part:

"We are pleased that enrollment of the second cohort was completed very rapidly, which speaks to the urgent need to identify an effective treatment for fatty liver disease with advanced fibrosis," said Dr. Peter G. Traber, President, Chief Executive Officer, and Chief Medical Officer of Galectin Therapeutics Inc. "The goal of therapy with GR-MD-02 in NASH patients with advanced fibrosis is the reversal of fibrosis and prevention of complications of cirrhosis and liver transplantation."

26.  On May 13, 2014, Galectin issued a press release announcing it first quarter 2014 financial results. The Company reported a net loss of $5.4 million, or ($0.27) diluted earnings per share, for the first quarter of 2014. The release stated in part:

"We continued to make significant progress in our liver fibrosis development program through the first quarter of 2014. We announced the successful results of the first cohort of patients in our Phase 1 clinical trial for patients with NASH with advanced fibrosis, which demonstrated that GR-MD-02 was safe and well tolerated. Additionally, the results demonstrated positive changes in biomarkers, suggesting a therapeutic effect on fibrosis.  More recently, we announced on April 23, 2014, that we have completed the enrollment of all of the required patients in cohort 2 of this Phase 1 clinical trial, and we expect to announce the results around the end of July 2014," said Peter G. Traber, M.D., Chief Executive Officer, President and Chief Medical Officer, Galectin Therapeutics. "This Phase 1 first-in-man study is evaluating the safety, tolerability, pharmacokinetics and exploratory biomarkers for efficacy for single and multiple doses of GR-MD-02 when administered to patients with fatty liver disease with advanced fibrosis."

27. On July 24, 2014, Emerging Growth disseminated the following press release through *Accesswire* regarding Galectin:

> Fat is driving the bus these days in one narrow, but widening, biotech sector as companies strive for dominance. Among these are Galectin Therapeutics Inc. (GALT), Intercept Pharmaceuticals (ICPT), Raptor Pharmaceuticals (RPTP) and Gilead Sciences (GILD), all of which are in search of a cure for one stage or another of "fatty liver disease."
>
> \* \* \*
>
> From a clinical stage perspective, Intercept is leading the race, having delivered positive data from a Phase 2 trial of obeticholic acid (OCA) earlier this year. Shares tripled on the news. Galectin, a newly-coined member of the Russell 2000, **is nipping at Intercept's heels** and actually may be closer than what first appears with a Phase 1 trial because of the potential to treat fatty liver disease even once it has progressed. What distinguishes their approach from others that the timing of intervention with their proprietary carbohydrate polymer drug GR-MD-02 may be largely irrelevant to outcomes, with GR-MD-02 seeming to work well even in advanced stages of liver fibrosis. This is especially important in fatty liver diseases because they are silent killers, often going undiagnosed for many years. The Galectin drug was granted FDA fast-track approval nearly a year ago.
>
> Galectin has announced GR-MD-02 to be safe and well tolerated in the first cohort of patients in its clinical trial, as well as showing changes in key biomarkers, which suggests a therapeutic effect on fibrosis, or scarring of the liver that leads to loss of liver function. Enrollment has been completed in the second cohort, with results expected in the next few weeks, potentially a catalytic moment for the company's value.
>
> Further, late in June Galectin disclosed that research in an animal model of NASH showed an oral version of GR-MD-02 to demonstrate a significant improvement in disease. Coming at NASH with both infused and oral formulations could give Galectin a competitive edge going forward.
>
> \* \* \*
>
> The apparently sudden prevalence of fatty liver disease and NASH on the biotech horizon is due to the increasing incidence of obesity worldwide and greater awareness of the conditions. After all, NASH didn't even have a medical name three decades ago. A U.S. Centers for Disease Control report says that 34.9% of American adults are obese. That's a 50% increase in obesity in less than 40 years and has lent impetus to the rise in NASH, a disease dubbed "the next big global epidemic" on CNBC's NBR.

> Those are big numbers and potentially big profits. So it is clear that fat is indeed driving the biotech bus, with Galectin, Intercept, Gilead and Raptor in the front seats and vying to take control of the wheel.

28. Following Emerging Growth's press release, Galectin issued a press release announcing a conference call on July 25, 2014 to provide updated results from its Phase 1 NASH study.

29. Following these releases, Galectin's stock price increased from $13.72 per share to $15.32 per share.

30. On July 25, 2014, Feuerstein tweeted "$GALT paying penny stock promoters to issue misleading PRs posted to Y!"

31. On July 28, 2014, Bleecker Street Research published an article on *SeekingAlpha.com* claiming that Galectin "has strong ties to stock promoters" engaging in a misleading brand awareness campaign aimed at boosting its stock price.

32. On July 28, 2014, Feuerstein published an article on *TheStreet.com* revealing that Emerging Growth, through its parent company TDM, a penny-stock promotions firm, was the investor relations and marketing company Galectin was paying for misleading promotional campaigns to entice investors to buy its stock. The article stated in part:

> Last Thursday, Emerging Growth issued a press release, picked up by the Yahoo! Finance feed, which misleadingly compared Galectin to Intercept Pharmaceuticals (ICPT).
>
> > From a clinical stage perspective, Intercept is leading the race, having delivered positive data from a Phase 2 trial of obeticholic acid (OCA) earlier this year. Shares tripled on the news. Galectin, a newly-coined member of the Russell 2000, is nipping at Intercept's heels and actually may be closer than what first appears with a Phase 1 trial because of the potential to treat fatty liver disease even once it has progressed. What distinguishes their approach from others that the timing of intervention with their proprietary carbohydrate polymer drug GR-MD-02 may be largely irrelevant to outcomes, with GR-MD-02 seeming to work well even in advanced stages of liver fibrosis. This is especially important in fatty liver diseases because they are silent killers,

> often going undiagnosed for many years. The Galectin drug was granted FDA fast-track approval nearly a year ago.
>
> Only someone being paid to shill would claim Galectin is "nipping at Intercept's heels." Intercept is way ahead in developing a drug to treats non-alcoholic steatohepatitis (NASH), a severe form of fatty liver disease, and its clinical studies to date have been designed using appropriate endpoints.
>
> Galectin, by comparison, is conducting a phase I "safety" study of its NASH candidate enrolling a tiny number of patients and using endpoints which collect useless biomarker data. It's as if Galectin doesn't really want to find out if their drug is effective against NASH.
>
> After Emerging Growth's misleading press release was issued Thursday, Galectin followed up with a press release of its own on Friday to announce a conference call for Tuesday morning. The subject of the call: To discuss updated results from its phase I NASH study

33.     On July 29, 2014, Galectin announced it had posted a new presentation on its website about the results of the second cohort of patients in its Phase 1 clinical trial. The results were described as "poor" by analysts.

34.     Subsequently on July 29, 2014, Feuerstein published an article on *TheStreet.com* entitled "Galectin Drug is a Fatty Liver Flop," which stated in part:

> Fruit pectin is delicious spread on toast, but can an experimental drug derived from fruit pectin be effective as a treatment for fatty liver disease? Not so much, which explains the steep drop in Galectin Therapeutics(GALT) Tuesday.
>
> Galectin's experimental drug GR-MD-02 flopped in a phase I study of nonalcoholic steatohepatitis (NASH), a severe form of fatty liver disease. Across just about every biomarker for efficacy Galectin thought to measure, GR-MD-02 showed no difference from placebo. Galectin deemed the updated results from the phase I study to be a success because patients treated with GR-MD-02 reported no serious side effects, but of course, ineffective placebos rarely raise safety concerns.

35.     On this news, Galectin's stock plummeted $8.84 per share to close at $5.70 per share on July 29, 2014, a one-day decline of nearly 61% on volume of nearly 7.7 million shares.

36.     As a result of defendants' false statements, Galectin securities traded at artificially inflated levels during the Class Period. However, after the above revelations seeped into the market,

the Company's securities were hammered by massive sales, sending the Company's stock price down nearly 69% from its Class Period high.

37. In fact, defendants knew, but concealed, that the Company was utilizing the services of paid stock promoters to disseminate positive but misleading reports about Galectin's prospects. Moreover, GR-MD-02 did not provide the benefits suggested by defendants when discussing the patent the Company was awarded or the Phase 1 clinical trial it was conducting.

## LOSS CAUSATION

38. During the Class Period, as detailed herein, defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Galectin publicly traded securities and operated as a fraud or deceit on Class Period purchasers of Galectin publicly traded securities by misrepresenting the Company's business and prospects. Later, when defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the prices of Galectin publicly traded securities fell precipitously, as the prior artificial inflation came out of the prices over time. As a result of their purchases of Galectin publicly traded securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

39. Galectin's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

40. Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Galectin who knew that the FLS was false.

None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Galectin publicly traded securities during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Galectin has over 21.9 million shares of stock outstanding, owned by hundreds if not thousands of persons.

43.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions which may affect individual Class members include:

(a)     whether the 1934 Act was violated by defendants;

(b)     whether defendants omitted and/or misrepresented material facts;

(c)     whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e) whether the prices of Galectin publicly traded securities were artificially inflated; and

(f) the extent of damage sustained by Class members and the appropriate measure of damages.

44. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

45. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

47. Plaintiff makes the allegations herein based upon the investigation of plaintiff's counsel, which included a review of regulatory filings made by Galectin with the SEC, as well as other regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

48. Plaintiff incorporates ¶¶1-47 by reference.

49.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Galectin publicly traded securities during the Class Period.

51.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Galectin publicly traded securities. Plaintiff and the Class would not have purchased Galectin publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

52.     Plaintiff incorporates ¶¶1-51 by reference.

53.     The Individual Defendants acted as controlling persons of Galectin within the meaning of §20(a) of the 1934 Act. By virtue of their positions with the Company, and ownership of Galectin stock, the Individual Defendants had the power and authority to cause Galectin to engage in

the wrongful conduct complained of herein. Galectin controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.  Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.  Awarding plaintiff and the members of the Class damages, including interest;

C.  Awarding plaintiff's reasonable costs and attorneys' fees; and

D.  Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 30, 2014

THE O'MARA LAW FIRM, P.C.
WILLIAM M. O'MARA
DAVID C. O'MARA

*/s/ William M. O'Mara*
WILLIAM M. O'MARA

311 East Liberty Street
Reno, NV 89501
Telephone: 775/323-1321
775/323-4082 (fax)

ROBBINS GELLER RUDMAN
 & DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

C:\Users\leen\AppData\Local\Temp\opk1pm4j\Cpt Galectin Therapeutics.docx

## CERTIFICATION OF PLAINTIFF PURSUANT TO THE FEDERAL SECURITIES LAWS

I Marissa Ballesteros, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1. I have reviewed the complaint and authorize its filing.

2. I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3. I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4. I made the following transactions during the Class Period in the securities that are the subject of this action.

See Schedule A

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| | | |
| | | |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |
| | | |

5. I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6. I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of July 2014.

                                                                 DocuSigned by:
                                                                 *Marissa Ballesteros*
                                                                 _____
                                                                 Marissa Ballesteros

## SCHEDULE A

## SECURITIES TRANSACTIONS

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 07/24/2014 | 1,000 | $13.62 |